# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

|  |  |  |
|---|---|---|
| **CHARLES EUGENE ANDERSON,** | ) | |
| **TIMOTHY MEEKS,** | ) | |
| **SANDRA M. MEEKS, and** | ) | |
| **MICKEY ANDERSON,** | ) | |
| | ) | |
| **PLAINTIFFS,** | ) | |
| | ) | |
| **vs.** | ) | No. _____ |
| | ) | |
| **CORECIVIC, INC., CORECIVIC** | ) | **JURY DEMAND** |
| **OF TENNESSEE, LLC, VINCE** | ) | |
| **VANTELL, KEITH HUGGINS,** | ) | |
| **ROBERT FOHRD, and** | ) | |
| **SERGEANT F/N/U SMITH,** | ) | |
| | ) | |
| **DEFENDANTS.** | ) | |

## COMPLAINT

Come now the Plaintiffs, Charles Eugene Anderson ("Mr. Anderson"), Timothy and Sandra Michelle Meeks ("Mr. and Mrs. Meeks"), and Mickey Anderson, by and through their attorney, and for their causes of action against the Defendants would respectfully show to the Court and Jury as follows:

### I. The Parties

1.1     The Plaintiff, Mr. Anderson, is a prisoner in the custody of the Tennessee Department of Corrections ("TDOC"), housed at all relevant times at Trousdale-Turner Correctional Center ("TTCC"), located at 140 Macon Way, Hartsville, Tennessee 37074.

1.2     The Plaintiffs, Mr. and Mrs. Meeks are residents of Tracy City, Marion County, Tennessee.

1.3    The Plaintiff, Mickey Anderson is a resident of Dechard, Franklin County, Tennessee.

1.4    The Defendant, CoreCivic, Inc. ("Defendant CoreCivic"), is, upon information and belief, a foreign, for-profit corporation organized in the state of Maryland and operates the TDOC prison TTCC. CoreCivic and its employees and agents are acting under color of state law in all of their activities with respect to the incarceration of prisoners at TTCC.

1.5    CoreCivic of Tennessee, LLC is a limited liability corporation incorporated under the laws of Tennessee and operates the TDOC prison TTCC. CoreCivic and its employees and agents are acting under color of state law in all of their activities with respect to the incarceration of prisoners at TTCC.

1.6    The Defendant, Vince Vantell ("Defendant Vantell"), at all times relevant to this Complaint was acting under color of state law as the Warden of TTCC employed by Defendant CoreCivic under contract with TDOC. Defendant Vantell is being sued in his individual capacity for his deliberate indifference to his duties as a Warden for the TDOC facility TTCC.

1.7    The Defendant, Assistant Warden Keith Huggins ("Defendant Huggins"), at all times relevant to this Complaint was acting under color of state law was the Assistant Warden of TTCC employed by Defendant CoreCivic under contract with TDOC. Defendant Huggins is being sued in his individual capacity for his deliberate indifference to his duties as an Assistant Warden for the TDOC facility TTCC.

1.8    The Defendant, Investigator Robert Fohrd ("Defendant Fohrd"), at all times relevant to this Complaint was acting under color of state law as an Investigator employed by

2

Defendant CoreCivic under contract with TDOC. Defendant Fohrd is being sued in his individual capacity for his deliberate indifference to his duties as an Investigator for the TDOC facility TTCC.

1.9    The Defendant, Sergeant F/N/U Smith ("Defendant Smith"), at all times relevant to this Complaint was acting under color of state law as Sergeant employed by Defendant CoreCivic under contract with the TDOC. Defendant Smith is being sued in his individual capacity for his failure to perform, neglect of, and deliberate indifference to his duties as a Sergeant for the TDOC facility TTCC.

## II. Jurisdiction

2.1    This Court has jurisdiction over the Federal claims asserted in this action pursuant to 28 U.S.C.A. § 1331 (Federal Question) and § 1343 (Civil Rights), as well as 42 U.S.C.A. § 1983. This Court has jurisdiction over the State claims asserted in this action pursuant to 28 U.S.C.A. § 1367 (Supplemental).

## III. Venue

3.1    Venue of this action is proper pursuant to 28 U.S.C.A. 1391(b) in that the events giving rise to the action occurred in the Middle District of Tennessee.

## IV. Nature of The Case

4.1    This action arises under the Eighth Amendment to the United States Constitution and under federal law, specifically, the Civil Rights Act of 1964 as (amended), 42 U.S.C.A §1983 *et seq*. for violations of the Constitutional Rights of Mr. Loyde. Pendant claims of Mr. and Mrs. Meeks and Mickey Anderson arise under Tennessee Common Law.

3

## V. Facts

5.1     Mr. Anderson was at all relevant times, and is presently, an inmate in the custody of the TDOC.

5.2     In October 2023, Mr. Anderson was transferred to TTCC, in Hartsville, Trousdale County, where he remains currently.

5.3     TTCC is managed by the TDOC, which contracts with Defendant CoreCivic to provide services to this facility, including security services.

5.4     Almost immediately upon transfer to TTCC, Mr. Anderson became a repeated victim of gang violence, with gang members stealing his property and threatening and inflicting physical violence against him.

5.5     Additionally, almost immediately upon his transfer to TTCC, as a result of his property being stolen, gang members insisted it be "bought back" in an extortion scheme well-known among the staff and administrators at TTCC, including each of the individual Defendants in this case.

5.6     Mr. Anderson's mother, Mickey Anderson, who is elderly, was repeatedly contacted by Mr. Anderson who, under threat of harm by gang members, instructed that she pay money via mobile payment methods or "Green Dot" card payments to the gang members' affiliates outside the prison, or Mr. Anderson would be severely harmed or killed.

5.7     When Mr. Anderson was forced to call his mother, multiple gang members with shanks presented an immediate threat to his life, and gang members could be heard in the background giving orders for payments to Mickey Anderson.

4

5.8     Beginning in approximately October 2023, Mickey Anderson was contacted on an almost daily basis, demanding she pay between $40.00 and $150.00, or else her son would be physically harmed or killed by gang members directing the call.

5.9     These calls were placed from TTCC phone lines and presumably monitored by staff at TTCC.

5.10    When Mickey Anderson was financially unable to pay the money the gangs required, Mr. Anderson was forced to ask his family friends, Timothy and Sandra Meeks ("Mr. and Mrs. Meeks") for protection payments in order to preserve his life.

5.11    When Mrs. Meeks learned of the extortion and the threats and violence against Mr. Anderson, she began calling TTCC to get help for Mr. Anderson; eventually Defendant Fohrd returned her call and she explained fully about the extortion and the violent threats and assaults.

5.12    Despite Mrs. Meeks' thorough explanation of the threats and extortion Mr. Anderson was subject to, Defendant Fohrd did nothing to meaningfully intervene or place Mr. Anderson in protective custody.

5.13    On May 22, 2024, Mrs. Meeks reached out to TTCC's Warden's office, sending multiple emails that provided detailed information of the gang members' incessant extortion of Mickey Anderson, as well as recent physical threats and physical assaults by gang members against Mr. Anderson.

5.14    Cynthia Renea Watts ("Watts"), the Warden's Assistant and Legal Liaison acknowledged receipt of the complaints and assured Mrs. Meeks in writing that she had forwarded them to an assistant warden on May 22, 2024.

5.15    Upon information and belief, the information regarding Mr. Anderson was relayed to Defendant Huggins, assistant warden at TTCC.

5.16    On or about May 24, 2024, Defendant Smith spoke with Mrs. Meeks and acknowledged that Mr. Anderson was under a threat of imminent harm and committed to placing him in protective custody at TTCC.

5.17    Similarly, Mrs. Meeks had additional conversations with Defendant Fohrd, and he assured her that Mr. Anderson would either be placed in protective custody or transferred to a different facility.

5.18    Despite the knowledge that Mr. Anderson was in need of protective custody due to physical assault with deadly weapons, and the protracted extortion of his family by gang members, Defendants Smith, Fohrd, and/or Huggins all failed to take any meaningful action, including placing Mr. Anderson in protective custody in a timely manner.

5.19    On or about June 3, 2024, at approximately 6:00 a.m., Mr. Anderson was assaulted again by gang members and his property was stolen.

5.20     Mrs. Meeks again emailed Watts as the Warden's Assistant and Legal Liaison at TTCC to provide additional notice of the continued physical assaults, and to remind her that Defendant Smith approved protective custody but failed to secure it for Mr. Anderson.

5.21    Between May and October 2024, Mr. Anderson continued to be threatened with death and/or serious bodily harm by gang members and was assaulted with deadly weapons at TTCC.

5.22    On or about October 9, 2024, Mr. Anderson was sexually assaulted by at least four (4) gang members in a dayroom when they overcame him and raped him anally with a broom handle.  No staff member at TTCC intervened during the rape.

5.23    The gang members threatened Mr. Anderson that if he reported the assault he would be killed.

5.24    The stated reason for the rape was a $1000.00 "debt" owed to the gang that was unpaid.

5.25    The day following the rape, Mr. Anderson went to the medical unit, but did not report the details of the incident due to fear for his life.

5.26    On October 11, 2024, Defendant Fohrd reviewed the allegations of the sexual assault on Mr. Anderson and the history of extortion by the prison gangs and recommended protective custody.

5.27    Over the next two (2) days, Mr. Anderson was obviously bleeding significantly and began requesting medical care, which he was denied.

5.28    When Mr. Anderson was finally taken to the medical unit, it was confirmed that he was bleeding from his injuries in the gang rape at TTCC.

5.29    Mr. Anderson received outside medical care on or about October 13, 2024, at Nashville General Hospital for injuries sustained during the rape and was scheduled for a scope procedure.

5.30    Once returned to TTCC from Nashville General Hospital, Mr. Anderson was still not placed in protective custody and was again attacked by gang members when scalding hot water was poured on his face as he slept.

7

5.31    Mr. Anderson was taken to the medical unit over this attack but was still not placed in protective custody.

5.32    Mr. Anderson was attacked again and threatened with harm if he did not perform sexual favors for the gang members, which he refused.

5.33    On October 18, 2024, Mr. Anderson lodged a written request for protective custody based upon the gang rape that occurred on October 9, 2024, and due to him fearing for his life; in this request, he reiterated his family had been extorted for money "for months," and he pled for help.

5.34    Also on October 18, 2024, Corrections Officer Madison Barnes reviewed Mr. Anderson's allegations and recommended protective custody; this document was forwarded to Defendant Huggins.

5.35    Defendant Huggins requested a review by Defendant Fohrd to be completed on or by October 31, 2024, to be presented at the protective custody hearing; the report was already complete as of October 11, 2024.

5.36    After repeated complaints and a request to file a Prison Rape Elimination Act ("PREA") complaint, Mr. Anderson was led to a meeting with Defendants Huggins and Vantell, and then-TTCC PREA coordinator Sidney Carter ("Carter")(now warden of the Coffee (Georgia) Correctional Facility, another CoreCivic facility, as of May 2025), in Defendant Huggins' office.

5.37    Defendant Vantell told Mr. Anderson it was "okay if he was gay," to which Mr. Anderson replied he was not.

5.38    This interaction was an attempt to cover-up the rape as a consensual act and escape liability for the Defendants' acts and omissions.

8

5.39    During this meeting, Mr. Anderson asked Defendants Vantell and Huggins, as well as Carter, to be placed in protective custody and to file a PREA complaint, and they denied both requests.

5.40    On November 1, 2024, a panel of three (3) individuals denied Mr. Anderson protective custody or a new housing assignment because, it was alleged, he "was not honest about why he needed protective custody" and "became argumentative with the board." The reports generated by Correctional Officer Barnes and Defendant Fohrd were not addressed in the panel's written decision.

5.41    Defendant Vantell approved the decision of the Board, denying protective custody to Mr. Anderson, despite two (2) recommendations for protective custody (including one from Defendant Fohrd); a recent gang rape requiring outside medical treatment; a personal conversation with Mr. Anderson about the assault; other attacks requiring medical treatment in-house; and numerous emails to his office over a period of months detailing serious physical threats, assaults, and extortion.

5.42    Defendant Vantell is the final policy maker for TTCC as it pertains to the grant or denial of protective custody, pursuant to TDOC Policy.

5.43    In December 2024, Mickey Anderson spoke with Defendant Fohrd again and he instructed her to pay the gangs "one more time" to buy back Mr. Anderson's property; upon information and belief, this conversation occurred in the presence of Mr. Anderson and gang members.

5.44    Mickey Anderson was told and believed if she paid the gang "one more time," Mr. Anderson would finally be placed in protective custody or relocated to a different prison.

9

5.45    Despite their knowledge of persistent and protracted criminal conduct, Defendants Vantell, Huggins, Fohrd, and Smith disregarded that conduct and permitted Mr. Anderson to be continuously subjected to threats and acts of serious physical, sexual, and emotional harm.

5.46    Because the Defendants failed to stop gang violence and extortion directed towards Mr. Anderson and his family, the violence and extortion continues, without reprieve, even to present.

5.47    Since the October 2024 incident, Mr. Anderson has received multiple disciplinary "write ups" for refusing his cell assignment, as segregation (the form of punishment for such conduct) is the only way he can get protection from constant gang violence, as he has still not been granted protective custody and remains in general population.

5.48    Defendant Vantell resigned as Warden of TTCC, effective April 2025, following a period of involuntary administrative leave and amid a Department of Justice investigation into inmate physical and sexual violence, as well as the understaffing of TTCC.

5.49    The individual Defendants, and each of them, were aware of their duty to protect prisoners, including Mr. Anderson, from physical and sexual assaults by other inmates.

5.50    The individual Defendants, and each of them, were aware of the substantial risk of harm to Mr. Anderson posed by physical and sexual assaults from other inmates, especially those gang affiliated.

5.51    The individual Defendants, and each of them, disregarded the substantial risk of harm to Mr. Anderson and failed to stop the assaults against Mr. Anderson by placing him in protective custody, which they were certainly aware he needed.

10

5.52    Defendants CoreCivic and the individual Defendants were aware of the substantial risk of harm to family members and inmates due to rampant extortion by gangs in CoreCivic prisons; they were aware of the particular risk of harm to Mr. Anderson and his family based upon the verbal and written reports of Mrs. Meeks and Mickey Anderson, and Mr. Anderson's repeated visits to medical for assault-related injuries due to "unpaid debts."

5.53    Defendants CoreCivic and the individual Defendants disregarded the substantial risk of harm to Mr. Anderson and his family when they failed to segregate Mr. Anderson so as to stop the gang's extortion scheme against Mickey Anderson and Mr. and Mrs. Meeks.

5.54    At all relevant times, the Defendants were acting under the color of the statutes, ordinances, regulations, customs, and usages of the State of Tennessee and under the authority of their office as employees, contractors, and/or correctional employees in the State of Tennessee.

5.55    Mr. Anderson was subjected to threats of physical violence, actual physical violence, sexual assault, and resultant physical and emotional injuries from all of these attacks and the extortion of his mother and friends.

5.56    Mr. and Mrs. Meeks and Mickey Anderson were subjected to emotional distress, financial loss, and the effects of the outrageous conduct of the Defendants.

## COUNT I
### (Eighth Amendment - Physical and Sexual Abuse - Individual Defendants)

6.1    The individual Defendants, and each of them, under color of law, deprived Mr. Anderson of rights secured by the Eighth Amendment to the United States Constitution, including his right to be free from unlawful physical and sexual violence by gang-affiliated inmates.

6.2    Mr. Anderson's right to be free from physical and sexual violence by other inmates was clearly established at the time of the offending inmates' conduct towards him.

11

6.3    Mr. Anderson faced an objectively excessive risk of harm to his life and safety based upon threats with deadly weapons and the extortion of his family, which was reported to TTCC verbally and in writing on or before May 22, 2024.

6.4    The individual Defendants were deliberately indifferent to Mr. Anderson's risk of harm, in that they had actual notice of it, and failed to respond reasonably to it (including, but not limited to providing him with protective custody), causing him to sustain more violent attacks and injuries.

6.5    The individual Defendants had specific notice and were aware of very specific threats directed toward Mr. Anderson and his family, as this information was conveyed verbally and *via* email to the warden's office, as well as to the individual Defendants, on multiple occasions beginning on or before May 22, 2024.

6.6    Defendant Smith acknowledged Mr. Anderson's need for protective custody and assured Mickey Anderson and the Meeks that he would be placed in protective custody on or about May 24, 2024.

6.7    Despite this acknowledgement, and due to Defendant Smith's deliberate indifference, Mr. Anderson was not placed in protective custody and was assaulted on numerous occasions after May 24, 2024, including, but not limited to, June 2024 and October 2024, the latter of which was a violent sexual assault.

6.8    Likewise, Defendant Fohrd, spoke with Mr. Anderson and his family and acknowledged his need for either protective custody and/or a transfer to a different facility, but he failed to protect Mr. Anderson.

12

6.9    Despite this acknowledgement, and due to Defendant Fohrd's deliberate indifference, Mr. Anderson was not placed in protective custody and was assaulted on numerous occasions after May 24, 2024, including, but not limited to, June 2024 and October 2024, the latter of which was a violent sexual assault.

6.10    Upon information and belief, Defendant Huggins received Mrs. Meeks' emailed complaints, and personally spoke with Mr. Anderson after his sexual assault, giving him direct knowledge of Mr. Anderson's need for protection from inmate gang violence.

6.11    Despite this knowledge, and due to Defendant Huggins' deliberate indifference, Mr. Anderson was not placed in protective custody and was assaulted on numerous occasions after May 24, 2024, including, but not limited to, June 2024 and October 2024, the latter of which was a violent sexual assault.

6.12    Based upon the foregoing acts and/or omissions, Plaintiff is entitled to special and general compensatory damages, including but not limited to, emotional, physical, economic, and pecuniary damages, punitive damages, and reasonable attorney's fees and costs as against each individual Defendant.

COUNT II
(Eighth Amendment - Failure to Protect - Individual Defendants)

7.1    The conduct of the individual Defendants described above deprived Mr. Anderson of his right to be free from violent physical and sexual violence by other inmates as guaranteed under the Eighth Amendment to the United States Constitution.

7.2    Each of the individual Defendants had a duty to protect Mr. Anderson from violent physical and sexual assaults by other inmates.

13

7.3    Each of the individual Defendants were aware of the excessive risk that gang-affiliated inmates posed to Mr. Anderson through documented reported threats of physical abuse, actual physical abuse, and continuous extortion of his family.

7.4    Each of the individual Defendants deliberately disregarded that excessive risk and failed to protect Mr. Anderson from continued physical abuse and eventual sexual abuse by gang-affiliated inmates.

7.5    Each of the individual Defendants are liable to Plaintiff for special and general compensatory damages, including but not limited to, emotional, physical, economic, and pecuniary damages, punitive damages, and reasonable attorney's fees and costs.

COUNT III
(CoreCivic Liability - Decision of a Final Policymaker and Custom)

8.1    By their acts and omissions, CoreCivic, through its final policymaker(s) at TTCC (Defendant Vantell) implicitly ratified the improper and illegal conduct of the individual Defendants, *to wit*, denying Mr. Anderson's placement in protective custody or, in the alternative, a transfer to a different facility to prevent further harm and threats of harm, with full knowledge of protracted threats, extortion, and physical and sexual violence against him.

8.2    The final policymaker, Defendant Vantell, had actual knowledge of the longstanding threats, assaults, and extortion, and made a conscious decision to deny protective custody for Mr. Anderson.

8.3    The above-described acts and omissions demonstrated a deliberate indifference on the part of the policymaker of CoreCivic at TTCC, Defendant Vantell, to the constitutional rights of persons within TTCC, and were the cause of the violations of Plaintiffs' rights alleged herein.

14

8.4    Additionally, there is a well-settled custom at CoreCivic facilities, and TTCC particularly, that inmate-on-inmate violence was and is tolerated and accepted, with no meaningful recourse for the victimized inmates or their families.

8.5    Inmate-on-inmate violence is significantly higher at CoreCivic facilities than other TDOC facilities, and has been for years, as documented by governmental agencies and audits.

8.6    The conditions at TTCC, including inmate violence, are so severe that the United States Department of Justice ("USDOJ") has been and is conducting an investigation into the conditions of confinement, specifically at TTCC.

8.7    According to the USDOJ, "[b]ased on an extensive review of publicly available information and information gathered from stakeholders, the department has found significant justification to open this investigation, including state audits that have flagged dangerous understaffing and safety concerns since Trousdale Turner first opened in 2016. The investigation will examine whether Tennessee protects those incarcerated at Trousdale Turner from harm, including physical violence and sexual abuse."

8.8    As noted by the USDOJ, TTCC has been plagued with problems since it opened its doors, including staffing shortages, and physical and sexual assaults that far exceed other facilities.

8.9    Mr. Anderson is exactly the type of individual that the USDOJ has described, as he has fallen victim to repeated assaults, threats, and extortion for well over a year with no meaningful response from CoreCivic's understaffed facility at TTCC.

8.10    CoreCivic had a long-standing, well-settled unwritten custom to tolerate inmate-on-inmate physical, sexual violence, and gang violence, thus leading to the USDOJ investigation.

15

8.11 CoreCivic's custom of tolerating such violence was the moving force behind Mr. Anderson's ongoing assaults (physical and sexual) as well as threats and extortion of his family, with no recourse or protection.

8.12 As a result of the acts and omissions of CoreCivic's final policy maker at TTCC, Defendant Vantell, as well as the well-settled custom of tolerating inmate-on-inmate physical and sexual assaults with no meaningful response, Mr. Anderson was harmed and continues to be harmed, and has suffered damages as stated herein.

COUNT IV
(Failure to Supervise Inmates and Failure to Protect
Timothy Meeks, Sandra Michelle Meeks, and Mickey Anderson)

9.1 CoreCivic and its employees at TTCC have a duty to conduct its prison operations in such a way as to protect the public from criminal behavior.

9.2 CoreCivic and its employees at TTCC have a statutory and contractual duty to supervise and provide security for inmates, and to prevent harm to the public at the hands of inmates housed at its facilities, including TTCC.

9.3 CoreCivic, and the individual Defendants named herein, have breached their duty by repeatedly failing to supervise inmates and stop criminal behavior perpetrated on the public, *to wit*, extortion perpetrated repeatedly on Timothy Meeks, Sandra Michelle Meeks, and Mickey Anderson.

9.10 CoreCivic and each of the individual Defendants further breached their duty by failing to stop the gang-run extortion scheme which used TTCC's own phone lines to accomplish its goals.

16

9.11    CoreCivic and each of the individual Defendants further breached their duty by failing to place Mr. Anderson in protective custody, so that the gang members did not have continued access to Mr. and Mrs. Meeks and Mickey Anderson to extort them.

9.12    As a result of the breach by CoreCivic and the individual defendants the plaintiffs suffered serious harm as described in this complaint, constituting negligence on the part of the defendants.

9.13    CoreCivic and the individual Defendants were generally aware of rampant gang activity within TTCC, including physical and sexual violence and extortion.

9.14    CoreCivic and the individual Defendants were actually aware of the extortion scheme targeting the Plaintiffs from at least May 22, 2024, forward, therefore the damages to these Plaintiffs was foreseeable.

9.15    CoreCivic is responsible for the negligent conduct of its employees, here Defendants Smith, Fohrd, Huggins, and Vantell, and each of them, under the theory of *respondeat superior.*

9.16    CoreCivic and the individual defendants were aware of the serious risk of and actual harm to the plaintiffs from the extortion scheme.

9.17    CoreCivic and the individual defendants consciously disregarded the risk of harm to the plaintiffs by refusing to place Mr. Anderson in protective custody or otherwise preventing the plaintiffs from being extorted and harmed by the gangs at TTCC.

9.18    As a result of the conscious disregard of the defendants the plaintiffs have suffered serious harm constituting recklessness.

17

DAMAGES

10.1    As a direct and proximate result of the improper conduct of the Defendants as described above, Mr. Anderson experienced emotional and physical harm and trauma.

10.2    As a direct and proximate result of the improper conduct of the Defendants as described above, Mr. Anderson experienced and continues to experience mental and emotional anguish.

10.3    As a direct and proximate result of the improper conduct of the Defendants as described above, Mr. Anderson has permanent disfigurement, including numerous scars on his face and head, from the repeated attacks by gang members left unsupervised at TTCC.

10.4    As a direct and proximate result of the improper conduct (acts and omissions) of the Defendants as described above, Timothy Meeks, Sandra Michelle Meeks, and Mickey Anderson have suffered economic losses.  Additionally, they are entitled to compensatory damages, including an award for emotional trauma, and punitive damages, all of which should be determined by a jury.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully demand judgment against Defendants, and each of them, jointly and severally as follows:

1.    That proper process issue and be served upon the Defendants, requiring them to answer this Complaint within the time required by law;

2.    That Plaintiffs  be awarded a judgment for compensatory damages in an amount to be determined by the trier of fact not to exceed the maximum amount allowed by law;

3.     That the Plaintiffs be awarded a judgment for punitive damages in an amount that is necessary to punish the Defendants and to deter others from committing similar wrongs in the future;

4.     That Mr. Anderson be awarded his costs, litigation costs, discretionary costs, pre- and post-judgment interest, and attorney's fees pursuant to 42 U.S.C. §1988;

5.     That Mr. Anderson be granted immediate injunctive relief to place him in protective custody or to relocate him to a different facility where he will be protected from the immediate risk of harm he faces; and

6.     That Plaintiffs be granted such other, further, and general relief as to which she is entitled.

Respectfully Submitted,

MOSELEY & MOSELEY
ATTORNEYS AT LAW

BY:     /s/  *James Bryan Moseley*
            James Bryan Moseley, No. 021236
Attorneys for Plaintiff

237 Castlewood Drive, Suite D
Murfreesboro, Tennessee 37129
Phone: (615) 254-0140
Fax:  (615) 634-5090
bryan.moseley@moseleylawfirm.com


    /s/ Leanne A. Thorne
Leanne A. Thorne, No. 023481
P. O. Box 262
Lexington, TN  38351
(731) 968-9810
thornelaw@hotmail.com

19